UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING INVESTIGATION | ML No: 1:22-ml-00919 |

*Reference:*     DOJ Ref. # CRM-182-80014

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Argentina.  In support of this application, the United States asserts:

RELEVANT FACTS

1.     The Central Authority of Argentina, the Ministry of Foreign Affairs and Worship, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters with Related Optional Protocol, U.S.-Arg., January 10, 1995, S. TREATY DOC. NO. 105-25 (1996) (the Treaty).

2.     As stated in the Request, Federal Court No. 3 in Criminal and Correctional Matters in Argentina, is prosecuting Juan Martin Costantino (Costantino), Francisco Costantino (Francisco), and others for money laundering and human trafficking, which occurred from in or

about 2004 to November 30, 2015, in violation of the criminal law of Argentina, specifically, Articles 303 and 145 of the Argentine Penal Code.  Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Argentine authorities, Costantino, Francisco, and others (the defendants) were charged for recruiting, transporting, and receiving victims for forced labor and human trafficking.  The defendants operated a farm in Argentina where they forced victims to work, exploiting them for rural labor and trafficking them in violation of Argentine law.  The victims were forced to work on farms called Costamari and La Loma in the city of Mar del Plata.  The victims called Costantino the master, owner, or owner's son.  Francisco, Costantino's father, was known as the master, owner, or boss.  Argentine authorities are unsure of when the exploitation of these victims occurred, but report that the victims stated they worked on the farm as early as 2004.

4. A search of La Loma showed that forty-one people worked on the farm in exploitive conditions.  During their time at La Loma, some of the victims received a payment of 25% of the price at which their harvested agricultural commodities sold. However, the landowners and supervisors fixed the rate and price of the agricultural commodities sold.  Other victims earned a fixed rate per crate packed of the agricultural commodities. For example, one victim earned 4 AR (approximately 0.03 USD) per crate he packed.  Another victim labored as a seasonal work, receiving advances on his paycheck and collecting the remaining balance at the end of the season before returning to his homeland.

5. At least seventeen additional victims were forced to work for a fixed monthly rate which was often less than the minimum pay rate required, in violation of Argentine labor laws.  These victims included a family with two underage children.  Two more victims performed work on various buildings, earning 200 AR (approximately 1.50 USD) for eight hours of work per day.  These victims were paid on a weekly basis.  In addition, Argentine authorities believe two

different victims were recruited to work and live on the farm, earning a monthly rate of 7,500 AR (approximately 56 USD).  Unlike the other victims, these victims told authorities they did not live on the farm, but rather lived in a house in another locality.  However, these victims had a room at their disposal on the farm so that they could stay overnight if the workday was long.

6. Argentine authorities also learned that the defendants considered some of the women "help" for their husbands.  These women received no payment for their labor, worked unregistered, and without health insurance.  The victims often lived on the farm in precarious conditions. Further, the accused used the victims' low rate of literacy, underage children, and position as foreigners (many of the workers were from Bolivia) to take advantage of them.  Further, the victims were provided loans and/or advances of their paychecks in order to buy food while at the farm.

7. Argentine authorities also interviewed the victims at Costamari Farm to get additional information about the conditions on that farm.  Of the ninety-two victims interviewed, thirty-two were minors and two were working on site when authorities arrived.  The victims stated that they responded to Francisco and Costantino and often worked every day of the week for at least ten hours per day.  Authorities learned that the victims were not registered, and the defendants failed to provide labor contracts with clearly defined working terms and payment amounts.  The victims worked under an indebtedness system and were threatened with nonpayment if they wanted to take a day off.

8. Further, the homes they lived in were small and cramped with nylon walls where many parents and children slept in the same room.  These homes were placed near an agrichemical storehouse or near a chamber used for human waste.  The victims report that they shared a bathroom outside of their homes, but the bathroom had no hot water and functioned on a poor and hazardous electricity installation.  One victim stated that he previously used a cesspit to use the restroom, but after making several requests, the defendants provided a toilet for him.

Argentine experts analyzed field water samples at the farms and concluded that the water provided by the defendants to the victims is not drinkable. One of the defendants testified at a preliminary hearing that Francisco stopped going to the farm because toxicants made him sick.

9. The Argentine Financial Intelligence Unit informed Argentine authorities that Costantino, Francisco, and their wives are the holders of Lloyd's bank account number XXXXXXXXXXX3301, located in the United States. However, the defendants failed to report this bank account number to Argentine authorities in violation of Argentine law. Argentine authorities believe that the defendants used this bank account to transfer proceeds received from human trafficking and from both the victims and the payment for goods harvested using the victim's illegal labor.

10. To further the investigation, Argentine authorities have asked U.S. authorities to provide bank records pertaining to Lloyd's bank account number XXXXXXXXXXX3301.

LEGAL BACKGROUND

11. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

12. The United States and Argentina entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters. See Treaty,

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Article 1. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. Article 5 ("The courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.").

13. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*          \*          \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*          \*          \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

14. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen.

Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

15.    An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4] Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)--(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

16. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

17. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the Ministry of Foreign Affairs & Worship, the designated Central Authority in Argentina, seeks assistance in the prosecution of money laundering and human trafficking – criminal offenses in Argentina.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty.  Finally, this application was properly filed in the District of Columbia.

18. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

19. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S.

criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

20. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to

collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Erica Y. Laster
Trial Attorney
D.C. Bar Number 1032449
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 353-1677
Erica.Laster@usdoj.gov